April Hollingsworth (Bar No. 9391)
Katie Panzer (Bar No. 16919)
**HOLLINGSWORTH LAW OFFICE**
1881 South 110 East
Salt Lake City, Utah 84105
Tel: (801) 415-9909
Facsimile: (801) 303-7324
april@aprilhollingsworthlaw.com
katie@aprilhollingsworthlaw.com

Sally J. Abrahamson*
**WERMAN SALAS P.C.**
335 18th Pl. NE
Washington D.C. 20002
Tel: (202) 830-2016
Facsimile: (312) 419-1025
sabrahamson@flsalaw.com

*Admitted *pro hac vice*

*Attorneys for Plaintiffs and
the Proposed Collective*

*Additional Counsel on Signature Page*

---

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF UTAH
## CENTRAL DIVISION

| | |
|---|---|
| **AUSTIN HAWTHORNE, ROSS MITCHELL, ZACHARY FOTIS, BRAYDEN CAMPBELL, JOSH BAUMAN, SHAWN PEPPER, JOE CULLAR, JAKE MOSS, and MADELINE CELL, individually and on behalf of all others similarly situated,**<br><br>**Plaintiffs,**<br><br>v.<br><br>**PODIUM CORPORATION, INC.,**<br><br>**Defendant.** | **UNOPPOSED MOTION FOR APPROVAL OF FLSA SETTLEMENT AGREEMENT AND MEMORANDUM OF LAW IN SUPPORT**<br><br>**Civil Action No. 24 Civ. 00196**<br><br>**Judge: Hon. Nielson** |

**TABLE OF CONTENTS**

INTRODUCTION ..........................................................................................................1

PROCEDURAL BACKGROUND AND SETTLEMENT NEGOTIATIONS.............................1

    I.    Factual Allegations ..........................................................................1

    II.    Overview of Investigation, Litigation, and Settlement Negotiations .....................2

SUMMARY OF THE SETTLEMENT TERMS ...................................................................3

    I.    The Settlement Fund ..........................................................................3

    II.    Eligible Employees .............................................................................3

    III.    Notice and Check Distribution Process .................................................3

    IV.    Release ..........................................................................................4

    V.    Settlement Awards .............................................................................4

    VI.    Service Awards .................................................................................4

    VII.    Settlement Administrator ....................................................................5

    VIII.    Attorneys' Fees and Litigation Costs..................................................5

ARGUMENT ..............................................................................................................5

    I.    One-Step Approval Is Appropriate for FLSA Collective Action
    Settlements..........................................................................................5

    II.    The Proposed Settlement Should Be Approved Because It Is a Fair
    and Reasonable Resolution of a Bona Fide Dispute. ................................7

        A.    A Bona Fide Dispute Existed Between the Parties....................7

        B.    The Proposed Settlement is Fair and Reasonable. ....................9

    III.    The Requested Service Award Should be Approved...........................10

    IV.    The Settlement Administrator Should be Appointed............................12

    V.    Plaintiffs' Counsel's Request for Attorneys' Fees and Litigation
    Expenses to be Approved........................................................................12

A.      The Court Should Approve Attorneys' Fees as a Percentage of the Fund. ............................................................................................12

B.      Plaintiffs' Litigation Expenses..................................................................17

CONCLUSION............................................................................................................18

## TABLE OF AUTHORITIES

**Cases**                                                                                                          **Page(s)**

*Barbee v. Big River Steel, LLC*,
    927 F.3d 1024 (8th Cir. 2019) ................................................................................................... 12

*Been v. O.K. Indus., Inc.*,
    No. 02 Civ. 285, 2011 WL 4475291 (E.D. Okla. Sept. 26, 2011)............................................ 13

*Been v. O.K. Indus., Inc.*,
    No. 02 Civ. 285, 2011 WL 4478766 (E.D. Okla. Aug. 16, 2011)...................................... 13, 14

*Boeing Co. v. Van Gemert*,
    444 U.S. 472 (1980).................................................................................................................. 13

*Briggs v. PNC Financial Serv. Group, Inc.*,
    No. 15 Civ. 10447, 2016 WL 7018566 (N.D. Ill. Nov. 29, 2016) ..................................... 15-16

*Budicak Inc. v. Lansing Trade Grp., LLC*,
    No. 19 Civ. 02449, 2023 WL 7189144 (D. Kan. June 16, 2023)...................................... 13, 15

*Campbell v. C.R. England, Inc.*,
    No. 13 Civ. 00262, 2015 WL 5773709 (D. Utah Sept. 30, 2015) ........................................ 9, 11

*Carroll v. Schlumberger Tech. Corp.*,
    No. 20 Civ. 00619, 2021 WL 4245370 (D. Colo. Sept. 16, 2021) ............................................ 6

*Cazeau v. TPUSA, Inc.*,
    No. 18 Civ. 00321, 2021 WL 1688540 (D. Utah Apr. 29, 2021)............................................. 11

*Chieftain Royalty Co. v. Enervest Energy Institutional Fund XIII-A, L.P.*,
    888 F.3d 455 (10th Cir. 2017) ........................................................................................... 13, 14

*Florin v. Nationsbank of Georgia, N.A.*,
    34 F.3d 560 (7th Cir. 1994) ..................................................................................................... 14

*Gaskill v. Gordon*,
    160 F.3d 361 (7th Cir. 1998). ................................................................................................... 13

*Gaskill v. Gordon*,
    942 F. Supp. 382 (N.D. Ill. 1996) ............................................................................................ 13

*Genesis Healthcare Corp. v. Symczyk*,
    569 U.S. 66 (2013).................................................................................................................... 6

*Goldberger v. Integrated Res., Inc.*,
    209 F.3d 43 (2d Cir. 2000) ....................................................................................................... 14

*Gunrum v. Cleveland Integrity Servs., Inc.*,
    No. 17 Civ. 55, 2017 WL 3503328 (N.D. Okla. Aug. 16, 2017) ............................................. 6

*Johnson v. Georgia Highway Express, Inc.*,
    488 F.2d 714 (5th Cir. 1974) ...................................................................... 14

*Keel v. O'Reilly Auto Enterprises, LLC*,
    No. 17 Civ. 667, 2018 WL 10509413 (D. Utah May 31, 2018) ................ 8

*Kennedy v. Mountainside Pizza, Inc.*,
    No. 19 Civ. 01199, 2021 WL 5882138 (D. Colo. Dec. 13, 2021) ............ 6

*Lucas v. Kmart Corp.*,
    234 F.R.D. 688 (D. Colo. 2006) ............................................................. 10

*Lynn's Food Stores, Inc. v. U.S.*,
    679 F.2d 1350 (11th Cir. 1982) ................................................................ 7

*Martinez v. Back Bone Bullies Ltd.*,
    2022 WL 782782 (D. Colo. Mar. 15, 2022) ............................................. 5

*Matter of Cont'l Ill. Sec. Litig.*,
    962 F.2d 566 (7th Cir. 1992) .................................................................... 17

*McKeon v. Integrity Pizza LLC*,
    No. 18 Civ. 0932, 2020 WL 6782238 (D. Colo. Nov. 18, 2020) ............ 15

*McNeely v. Nat'l Mobile Health Care, LLC*,
    No. 07 Civ. 933, 2008 WL 4816510 (W.D. Okla. Oct. 27, 2008) ..... 11, 12

*Melgar v. OK Foods*,
    902 F.3d 775 (8th Cir. 2018) ................................................................... 14

*Mendez v. U.S. Nonwovens Corp.*,
    No. 12 Civ. 5583, 2016 WL 1306551 (E.D.N.Y. Mar. 31, 2016) ............ 8

*Nakamura v. Wells Fargo Bank, N.A.*,
    No. 17 Civ. 4029, 2019 WL 2185081 (D. Kan. May 21, 2019) .............. 14

*Osman v. Grube, Inc.*,
    No. 16 Civ. 00802, 2018 WL 2095172 (N.D. Ohio May 4, 2018) .......... 16

*Prena v. BMO Fin. Corp.*,
    No. 15 Civ. 09175, 2015 WL 2344949 (N.D. Ill. May 15, 2015) ............ 7

*Ramah Navajo Chapter v. Babbitt*,
    50 F. Supp. 2d 1091 (D.N.M. 1999) ....................................................... 17

*Sanchez v. Roka Akor Chicago LLC*,
    No. 14 Civ. 4645, 2017 WL 1425837 (N.D. Ill. Apr. 20, 2017) ............ 16

*Singer v. City of Waco, Tex.*,
    324 F.3d 813 (5th Cir. 2003) ................................................................... 17

*Skelton v. Gen. Motors Corp.*,
    860 F.2d 250 (7th Cir. 1988) ................................................................ 12

*Sutton v. Bernard*,
    504 F.3d 688 (7th Cir. 2007) ................................................................ 16

*Taubenfeld v. Aon Corp.*,
    415 F.3d 597 (7th Cir. 2005) ................................................................ 16

*Tuten v. United Airlines, Inc.*,
    41 F. Supp. 3d 1003 (D. Colo. 2014) ................................................... 11

*UFCW Loc. 880-Retail Food Emps. Joint Pension Fund v. Newmont Min. Corp.*,
    352 Fed. Appx. 232 (10th Cir. 2009) .................................................... 11

*Voulgaris v. Array Biopharma, Inc.*,
    60 F.4th 1259 (10th Cir. 2023) ............................................................. 12

**Statutes**

29 U.S.C. § 216(b) ......................................................................... 6, 13

## INTRODUCTION

Plaintiffs Austin Hawthorne, Ross Mitchell, Zachary Fotis, Brayden Campbell, Josh Bauman, Shawn Pepper, Joe Cullar, Jake Moss, and Madeline Cell ("Plaintiffs"), individually and on behalf of a collective they seek to represent ("Eligible Settlement Collective Members"), and Defendant Podium Corporation, Inc. ("Podium" or "Defendant"), have resolved their dispute and settled this wage and hour collective action.  The settlement satisfies all criteria for approval of a Fair Labor Standards Act ("FLSA") collective action settlement because it resolves a bona fide dispute and was the result of arm's-length settlement negotiations conducted by counsel well-versed in wage and hour law and with the assistance of a mediator.

Accordingly, Plaintiffs respectfully request that the Court issue an order approving the Parties' private settlement set forth in the Joint Stipulation of Settlement and Release Agreement ("Settlement Agreement").[1]  For the Court's convenience, a Proposed Order will be emailed to chambers simultaneously with the filing of this motion.

## PROCEDURAL BACKGROUND AND SETTLEMENT NEGOTIATIONS

### I.    Factual Allegations

Plaintiffs are individuals who were formerly employed by Defendant as Sales Development Representatives ("SDRs").  *See* Declaration of Sally J. Abrahamson ¶ 7, attached as Exhibit B, (herein "Ex. B (Abrahamson Decl. ¶_")).  Plaintiffs allege that Defendant violated the FLSA by not paying SDRs overtime wages as required by the FLSA.  *Id.*  Plaintiffs claim that Defendant misclassified SDRs as exempt from overtime in violation of the FLSA. Defendant denies that it has violated the FLSA with respect to the classification of SDRs as

---

[1]    The Settlement Agreement is attached as Exhibit A.  Unless otherwise indicated, all capitalized terms are defined in the Settlement Agreement.

exempt from overtime and denies that it failed to properly pay SDRs.

## II.    Overview of Investigation, Litigation, and Settlement Negotiations

Before filing this lawsuit, Plaintiffs' Counsel conducted an extensive investigation into the merits of the potential claims and defenses.  Ex. B (Abrahamson Decl.) ¶ 8.  Plaintiffs' Counsel focused their investigation and legal research on the underlying merits of the potential collective action members' claims, the damages to which they were entitled, and the likelihood of collective action certification.  *Id.* ¶ 9.  Plaintiffs' Counsel obtained and reviewed documents from the Plaintiffs, including onboarding and termination documents.  *Id.* ¶ 10.  Plaintiffs' Counsel also conducted in-depth interviews with the Plaintiffs and other SDRs.  *Id.* ¶ 11.

On March 7, 2023, in an effort to explore potential pre-litigation resolution of these claims, Plaintiffs' Counsel informed Defendant by letter of the allegations that Defendant's overtime pay practice violated the FLSA.  *Id.* ¶ 12.  Defendant denied the allegations set forth in Plaintiffs' demand letter and denied that it had improperly classified or paid its SDRs.  *Id.* ¶ 13. After multiple rounds of negotiations, the Parties executed a tolling agreement effective as of May 31, 2023. *Id.* ¶ 14.

The Parties subsequently engaged in an informal exchange of discovery.  *Id.* ¶ 15. Defendant produced payroll and other data to allow Plaintiffs' Counsel to prepare preliminary damage calculations.  *Id.* ¶ 16.  Plaintiffs' Counsel analyzed this data and constructed a damages model.  *Id.*  Between March 2023 and December 2023, the Parties engaged in numerous discussions regarding Plaintiffs' overtime claims.  The Parties exchanged information prior to mediation, drafted and exchanged mediation statements, and the case was mediated by Spencer D. Phillips, an experienced wage and hour mediator on December 4, 2023.  *Id.* ¶ 17.  On March 7, 2024, 2024, the Parties executed a settlement agreement that is the subject of this motion.  *Id.*

¶ 18.  On March 14, 2024, Plaintiffs filed their collective action complaint.

## SUMMARY OF THE SETTLEMENT TERMS

I.     **The Settlement Fund**

Defendant has agreed to pay $2,500,000 to settle the claims in this Action, which shall be used to provide for: (i) Settlement Payments to Eligible Settlement Collective Members; (ii) Service Awards to the Named Plaintiffs; (iii) Plaintiffs' Attorneys' Fees; (iv) Plaintiffs' Litigation Expenses; and (v) the Settlement Administrator costs.  Ex. A (Settlement Agreement) § 1(k).  The Settlement Fund does not include the employer's share of applicable employment taxes, which Defendant will pay separate and apart from the Settlement Fund.  *Id.*

II.    **Eligible Employees**

The Settlement Agreement defines Eligible Settlement Collective Members in this settlement as: 763 SDRs, including Plaintiffs, employed by Defendant as SDRs from June 1, 2020 through June 1, 2023.  Ex. A (Settlement Agreement) §§ 1(e) and (i).

III.   **Notice and Check Distribution Process**

Within seven days after the Effective Date, Defendant will provide the Settlement Administrator and Plaintiffs' Counsel with contact information for Eligible Settlement Collective Members.  Ex. A (Settlement Agreement) § 4(b).  Within seven days after the Effective Date, Defendant will deposit $2,500,000 into the Qualified Settlement Fund ("QSF").  *Id.* § 4(d). Within 21 days after Defendant fully funds the QSF with the Gross Settlement Amount, the Settlement Administrator will mail Settlement Checks via First Class U.S. Mail to each Eligible Settlement Collective Member, mail any Court-approved Service Awards to the Named Plaintiffs, and wire any Court-approved attorneys' fees and costs to Plaintiffs' Counsel.  *Id.* § 4(e).

The Settlement Administrator will obtain a correct address for any Eligible Settlement Collective Member for whom a Notice is returned as undeliverable, using Social Security Numbers, and re-mail notice to those individuals.  *Id.* § 4(e)(ii).  The proposed Notice is Exhibit B to the Settlement Agreement.  Ex. A (Settlement Agreement) B-1-3.

## IV.    Release

Only individuals who participate in the settlement will release any claims.  Ex. A (Settlement Agreement) § 5.  Eligible Settlement Collective Members who cash or deposit their Settlement Checks will release claims for unpaid overtime wages under federal, state, and local law while they worked for Podium as SDRs between June 1, 2020 and June 1, 2023.  *Id.*

## V.    Settlement Awards

Each Eligible Settlement Collective Member will be allocated a proportionate share of the Net Settlement Fund pursuant to an allocation formula based on the number of weeks they worked during the relevant period, their salary, and the state they worked.  Ex. A (Settlement Agreement) § 3(d) (specifying the formula).  Plaintiffs' Counsel calculated the amount of overtime wages that would be due to each Eligible Settlement Collective Member if they worked five overtime hours in 92% of the weeks they worked during the Collective Period.  *Id.* Plaintiffs' Counsel also calculated liquidated damages.[2]

## VI.    Service Awards

Under the Settlement Agreement, Plaintiffs seek Court approval for Service Awards of $7,500 for each Named Plaintiff, in recognition of services they rendered to the Eligible Settlement Collective Members in obtaining the benefits of the settlement as well as the risks

---

[2]    Because California Participating Settlement Collective Members will waive their related California state wage and hour claims, additional consideration was provided to them in the allocation formula. Ex. A (Settlement Agreement) § 3(d)(v).

they took in doing so.  Ex. A (Settlement Agreement) § 3(c).  The Plaintiffs assisted Counsel in the investigation of the Eligible Settlement Collective Members' claims, participated in settlement discussions, including virtually attending portions of the mediation and submitting witness statements, responded to points raised by Defendant, and provided vital assistance that helped Plaintiffs' Counsel achieve this settlement for the benefit of the Eligible Settlement Collective Members.  Ex. B (Abrahamson Decl.) ¶ 20.  Plaintiffs also are providing Defendant with a general release.  Ex. A (Settlement Agreement) § 3(c).  Defendant does not contest these amounts.

## VII.    Settlement Administrator

The Parties have retained Analytics Consulting LLC, an experienced wage and hour claims administrator, to serve as the Settlement Administrator.  Ex. B (Abrahamson Decl.) ¶ 21.

## VIII.   Attorneys' Fees and Litigation Costs

Under the Settlement Agreement, subject to Court approval, Plaintiffs' Counsel will receive one-third of the Gross Settlement Amount as attorneys' fees, plus reimbursement of out-of-pocket costs.  Ex. A (Settlement Agreement) § 3(b).

## ARGUMENT

## I.    One-Step Approval Is Appropriate for FLSA Collective Action Settlements.

As a preliminary matter, some courts in the Tenth Circuit find that court approval is unnecessary for FLSA settlements. *See, e.g., Martinez v. Back Bone Bullies Ltd.*, 2022 WL 782782, at *11-12 (D. Colo. Mar. 15, 2022) (collecting cases and rejecting court approval because it (1) reads into the FLSA a requirement that is not found in the text, (2) impliedly gives the impression that FLSA rights are more important than those found in other federal statutes, (3) unduly burdens everyone involved in the litigation process, and (4) interferes with the strong

general presumption of allowing parties to resolve disputes through private agreements); *Carroll v. Schlumberger Tech. Corp.*, No. 20 Civ. 00619, 2021 WL 4245370, at *1 (D. Colo. Sept. 16, 2021) (finding court approval unnecessary for FLSA settlements). Here, however, the parties agreed out of an abundance of caution to seek court approval. Ex. A (Settlement Agreement) § 4(a).

Plaintiffs seek approval of a FLSA collective action settlement and not a Federal Rule of Civil Procedure 23 ("Rule 23") settlement of any state wage and hour claims. Because there are no Rule 23 class claims in this case, Rule 23 does not apply, and the Court may grant approval to the FLSA settlement via a one-step process. *See* 29 U.S.C. § 216(b). *See, e.g.,* Ex. C (*Abernathy v. Molina Healthcare* Approval Order) (approving one-step method for distribution of settlement notice and settlement payments); Ex. D (*Stenulson v. ROI Solutions, LLC* Order and Motion for Approval) (D. Utah October 11, 2022) (same). This is because collective actions under Section 216(b) of the FLSA require workers to affirmatively opt into the litigation, unlike Rule 23 class actions, and thus do not implicate due process concerns. *Genesis Healthcare Corp. v. Symczyk*, 569 U.S. 66, 74 (2013) ("Rule 23 actions are fundamentally different from collective actions under the FLSA."). And here, Eligible Collective Members "opt in" by cashing or depositing their checks; any eligible collective member who does not deposit or cash their check will not release any claims.[3] There is no need to require that the settlement provide for opt-outs or

---

[3]      Courts regularly approve FLSA settlements with back-of-the check consents. *See Kennedy v. Mountainside Pizza, Inc.*, No. 19 Civ. 01199, 2021 WL 5882138, at *3 (D. Colo. Dec. 13, 2021) (approving a settlement where those who endorsed or cashed their checks waived their FLSA claims and anyone who did not endorse or cash their check did not release their FLSA claims); *Gunrum v. Cleveland Integrity Servs., Inc.*, No. 17 Civ. 55, 2017 WL 3503328, at *3, n. 2 (N.D. Okla. Aug. 16, 2017) (preliminarily approving a hybrid FLSA and Rule 23 settlement noting that the settlement agreement provided "two mechanisms to ensure that Class Members do not release their claims involuntarily: first, upon receipt of the Class Notice, Class

objections where individuals are not part of the settlement unless they affirmatively decide to participate in it.  *See Prena v. BMO Fin. Corp.*, No. 15 Civ. 09175, 2015 WL 2344949, at *1 (N.D. Ill. May 15, 2015).

## II.    The Proposed Settlement Should Be Approved Because It Is a Fair and Reasonable Resolution of a Bona Fide Dispute.

The Parties' Settlement was the product of arm's-length negotiations by experienced wage and hour class/collective-action counsel with the help of an experienced mediator.  Ex. B (Abrahamson Decl.) ¶ 22.  The Settlement has the effect of: (1) providing monetary relief to those Eligible Settlement Collective Members who opt into the Action by endorsing their check, (2) in exchange for a release of the Eligible Settlement Collective Members' overtime wage claims under federal, state, and local law, and (3) eliminating the inherent risks and costs both sides would bear if this complex litigation continued to resolution on the merits.  *Id.* ¶ 23.  Under these circumstances, a presumption of fairness should attach to the Settlement.  *See Lynn's Food Stores, Inc. v. U.S.*, 679 F.2d 1350, 1354 (11th Cir. 1982).

### A.    A Bona Fide Dispute Existed Between the Parties.

Courts approve FLSA settlements when they are reached as a result of contested litigation to resolve bona fide disputes.  *See Lynn's Food Stores,* 679 F.2d at 1353 n.8.  To determine if there is a bona fide dispute, courts look at the following factors: "(1) a description of the nature of the dispute; (2) a description of the employer's business and the type of work performed by the employee; (3) the employer's reasons for disputing the employee's right to a

---

Members will have an opportunity to either opt out or submit a claim form to increase their potential settlement award; and second, *Class Members who do not submit a timely claim form will receive a minimum payment as set forth in the Settlement Agreement but will not release any claims unless they sign and deposit or cash the check* … Accordingly, the Settlement Agreement provides a safety mechanism to ensure that Class Members do not release their claim unknowingly.") (emphasis added).

minimum wage or overtime; (4) the employee's justification for the disputed wages; and (5) if the parties dispute the computation of wages owed, each party's estimate of the number of hours worked and the applicable wage." *Keel v. O'Reilly Auto Enterprises, LLC*, No. 17 Civ. 667, 2018 WL 10509413, at *2 (D. Utah May 31, 2018).

Here, Plaintiffs' Complaint concisely sets forth their theory – Plaintiffs and the proposed Settlement Collective are or were SDRs, who performed inside sales work for Defendant by prospecting potential customers for Defendant and Defendant misclassified them as exempt from overtime under the FLSA administrative exemption and did not pay them overtime premiums for hours worked over 40 in a workweek. Ex. B (Abrahamson Decl.) ¶ 24.

On the other hand, Defendant believed that it properly classified and paid the SDRs, and even if the SDRs had been eligible for overtime, that the SDRs did not actually work any overtime hours. Consequently, Defendant denied wrongdoing and was prepared to defend against all claims asserted by the Plaintiffs and the proposed Settlement Collective.

Although Plaintiffs believe their case is strong, it is subject to risk. First, there was a risk that Plaintiffs would not succeed in certifying or maintaining a collective through trial. Prior to settlement, the Court has not yet conditionally certified the collective under 29 U.S.C. § 216(b). Such determinations would likely be reached only after rounds of extensive briefing. In the event that the Court granted conditional collective certification, Defendant could challenge such certification with a motion to decertify. *See, e.g.*, *Mendez v. U.S. Nonwovens Corp.*, No. 12 Civ. 5583, 2016 WL 1306551, at *3-*7 (E.D.N.Y. Mar. 31, 2016) (decertifying collective as the plaintiffs failed to show that their claims for overtime were supported by "generalized proof").

In addition, a trial on the merits would involve significant risks for Plaintiffs as to both liability and damages. As noted above, Defendant had asserted factual and legal defenses that

could have prevailed against the claims asserted by Plaintiffs and the proposed Settlement

Collective. In addition, establishing damages, including the overtime hours that SDRs worked,

could be difficult.  Ex. B (Abrahamson Decl.) ¶ 25.  While Plaintiffs' Counsel created and shared

a robust damages model, the Parties fundamentally disagreed as to the number of hours Eligible

Settlement Collective Members worked.  These issues could substantially affect the damages

owed to Plaintiffs.  *See Campbell v. C.R. England, Inc.*, No. 13 Civ. 00262, 2015 WL 5773709,

at *5 (D. Utah Sept. 30, 2015) ("The substantial risks to both parties in continuing to litigate the

case additionally make resolution through settlement more valuable than the mere possibility of a

more favorable outcome after further litigation.").

      Therefore, the Settlement is reasonable in light of these risks and should be approved.

      **B.    The Proposed Settlement is Fair and Reasonable.**

      When a proposed FLSA settlement was "fairly and honestly negotiated," a court should

approve it.  *Campbell v. C.R. England, Inc.*, No. 13 Civ. 00262, 2015 WL 5773709, at *5 (D.

Utah Sept. 30, 2015).  Factors that support that an FLSA settlement was "fairly and honestly"

negotiated include: (1) it was entered into after investigation and after discovery and damage

calculations; (2) it was negotiated at arm's length, including using a private mediator; and (3)

both parties were represented.  *Id.* (collecting cases).

      The settlement here meets all the fairness and reasonableness factors.  The Parties

engaged in months' long discussions and exchanges of documents and legal precedent regarding

the underlying legal theories and appropriate damage calculations.  Ex. B (Abrahamson Decl.) ¶

26.  Defendant provided Plaintiffs with payroll data including job titles, dates of employment,

total compensation, and base pay.  *Id.*  Plaintiffs' counsel spoke with the nine Named Plaintiffs

and other current and former SDRs of Defendant on multiple occasions.  *Id.*  Named Plaintiffs

also provided witness statements in support of their settlement position. *Id.* The negotiations culminated with an over 10-hour mediation on December 4, 2023. *Id.*

Further, the settlement of $2,500,000 represents phenomenal recovery of what Eligible Settlement Collective Members would have achieved had they prevailed on their claims and survived an appeal, and a substantial portion of what Defendant would be required to pay if faced with a judgment. Plaintiffs' Counsel estimates that the Gross Settlement Amount represents approximately 100 percent of Plaintiffs' actual lost wages and 50 percent of liquidated damages, and the Net Settlement Amount represents 100 percent of Plaintiffs' actual lost wages, assuming that Eligible Settlement Collective Members worked an average of 45 hours a week in 92% of the workweeks they worked between June 1, 2020 and June 1, 2023. *Id.* ¶ 27.

The allocation of the settlement is also reasonable. It reflects the proportion of damages owed to each Eligible Settlement Collective Member based on the number of weeks they worked for Defendant during the relevant period, the wages they earned, and if they worked in California, where they would be eligible for additional state law claims. Ex. A (Settlement Agreement) § 3(d). *See Lucas v. Kmart Corp.*, 234 F.R.D. 688, 695 (D. Colo. 2006) ("An allocation formula need only have a reasonable, rational basis, particularly if recommended by 'experienced and competent' class counsel.") (quotation and citation omitted).

### III.   The Requested Service Award Should be Approved.

The Settlement Agreement contemplates providing a Service Award to Named Plaintiffs in the amount of $7,500.00 each, to acknowledge their time and effort expended in helping to achieve a successful Settlement. In addition, Named Plaintiffs will also provide a broader release for Defendant. Ex. A (Settlement Agreement) § 3(c)(i). This payment is in addition to any payment they receive as their *pro rata* share of the Net Settlement Fund.

Courts allow separate awards to be paid to class representatives because of the "personal risk incurred or additional effort and expertise provided for the benefit of the class." *UFCW Loc. 880-Retail Food Emps. Joint Pension Fund v. Newmont Min. Corp.*, 352 Fed. Appx. 232, 235 (10th Cir. 2009); *see also, e.g., Campbell*, 2015 WL 5773709, at *8 (same); *McNeely v. Nat'l Mobile Health Care, LLC*, No. 07 Civ. 933, 2008 WL 4816510, at *16 (W.D. Okla. Oct. 27, 2008) (same).

The roles of the Named Plaintiffs in this litigation were crucial. They assisted Counsel in the investigation of the Eligible Settlement Collective Members' claims, submitted witness statements for the purposes of settlement discussions, participated in settlement discussions, including speaking with Plaintiffs' Counsel during mediation, responded to points raised by Defendant, and provided vital assistance that helped Plaintiffs' Counsel achieve this settlement for the benefit of the Eligible Settlement Collective Members. Ex. B (Abrahamson Decl.) ¶ 20. Their efforts strengthened Plaintiffs' position and aided in achieving an excellent result for the Eligible Settlement Collective Members. *Id.*

The Service Awards requested comports with service payments recently awarded to Named Plaintiffs in other FLSA actions and is only approximately two percent of the Gross Settlement Amount. *See, e.g., Cazeau v. TPUSA, Inc.,* No. 18 Civ. 00321, 2021 WL 1688540 (D. Utah Apr. 29, 2021) (approving incentive awards of $12,500 to two lead plaintiffs); *Campbell*, 2015 WL 5773709 (approving $7,500 service award to each of seven named plaintiffs); *Tuten v. United Airlines, Inc.*, 41 F. Supp. 3d 1003, 1010 (D. Colo. 2014) (approving $15,000 service award); *McNeely v. Nat'l Mobile Health Care, LLC*, No. 07 Civ. 933, 2008 WL 4816510, at *16 (W.D. Okla. Oct. 27, 2008) (same).

Accordingly, the Service Awards are reasonable, and this Court should approve them.

IV.    **The Settlement Administrator Should be Appointed.**

Plaintiffs also ask that the Court appoint Analytics Consulting LLC as the third-party Settlement Administrator.  Analytics Consulting LLC has experience administering large and complex settlements and was jointly selected by the Parties.  Ex. B (Abrahamson Decl.) ¶ 21.

V.    **Plaintiffs' Counsel's Request for Attorneys' Fees and Litigation Expenses to be Approved.**

Just as some courts have held that FLSA settlements do not require court approval, some courts have found that courts need not review attorneys' fees in FLSA settlements. *Barbee v. Big River Steel, LLC*, 927 F.3d 1024, 1027 (8th Cir. 2019) ("any authority for judicial approval of FLSA settlements in 29 U.S.C. § 216 does not extend to review of settled attorney fees. . . . The statute speaks of allowing fees 'in addition to any judgment awarded,' treating the merits of an FLSA claim and the attorney fees as distinct.").  However, per the Parties' Settlement Agreement, Plaintiffs request the Court approve their request for fees of one-third of the Gross Settlement Amount.

A.    **The Court Should Approve Attorneys' Fees as a Percentage of the Fund.**

Although there are two ways to compensate attorneys for successful prosecution of statutory claims—the lodestar method and the percentage-of-the-fund method—the Tenth Circuit has expressed "a preference for the percentage-of-the-fund approach." *Voulgaris v. Array Biopharma, Inc.*, 60 F.4th 1259, 1263 (10th Cir. 2023).  It is especially appropriate to use a common fund approach in cases based on fee shifting statutes when the "settlement fund is created in exchange for release of the defendant's liability both for damages and for statutory attorneys' fees . . . ." *Skelton v. Gen. Motors Corp.*, 860 F.2d 250, 256 (7th Cir. 1988).  Here, the Settlement releases Eligible Settlement Collective Members' statutory claims to fees under the

FLSA and state wage and hour laws.[4]  When counsel's efforts result in the creation of a common

fund, counsel is "entitled to a reasonable attorney's fee from the fund as a whole." *Boeing Co. v.*

*Van Gemert*, 444 U.S. 472, 478 (1980).

There are several other reasons that courts favor the percentage of the fund method.

First, the percentage of the fund method promotes early resolution, and removes the incentive for

plaintiffs' lawyers to engage in wasteful litigation in order to increase their billable hours.  *Been*

*v. O.K. Indus., Inc.*, No. 02 Civ. 285, 2011 WL 4478766, at *4 (E.D. Okla. Aug. 16, 2011),

*report and recommendation adopted*, 2011 WL 4475291 (E.D. Okla. Sept. 26, 2011) (percentage

of the fund method "aligns the interests of the class and its counsel"); *Chieftain Royalty Co. v.*

*Enervest Energy Institutional Fund XIII-A, L.P.*, 888 F.3d 455, 458 (10th Cir. 2017) (percentage

of the fund "awards class counsel a share of the benefit achieved for the class"); *Budicak Inc. v.*

*Lansing Trade Grp., LLC*, No. 19 Civ. 02449, 2023 WL 7189144, at *1 (D. Kan. June 16, 2023).

Where attorneys' fees are a percentage of the total, "courts can expect attorneys to make cost-

efficient decisions about whether certain expenses are worth the win." *Gaskill v. Gordon*, 942 F.

Supp. 382, 386 (N.D. Ill. 1996), *aff'd*, 160 F.3d 361 (7th Cir. 1998).

Second, the percentage of the fund method "approximates the market by basing the fee

award on what private counsel ordinarily would charge in contingent matters." *Been*, 2011 WL

4478766, at *4.  Here, the separately-negotiated, agreed contingency fee retainer agreement

between Plaintiffs and Plaintiffs' Counsel provides for a contingency fee of one-third of the

gross settlement amount.

Third, the percentage method preserves judicial resources because it saves the Court from

the cumbersome task of reviewing complicated and lengthy billing documents.  *Been*, 2011 WL

---

[4]      *See, e.g.*, 29 U.S.C. § 216(b).

4478766, at *4 (percentage of the fund "avoids the burdensome and complicated process of preparing and evaluating lodestar-based fee requests."); *Florin v. Nationsbank of Georgia, N.A.*, 34 F.3d 560 at 566 (7th Cir. 1994)  (noting "advantages" of percentage of the fund method's "relative simplicity of administration").  As the Second Circuit has explained, the "primary source of dissatisfaction [with the lodestar method] was that it resurrected the ghost of Ebenezer Scrooge, compelling district courts to engage in a gimlet-eyed review of line-item fee audits." *Goldberger v. Integrated Res., Inc.*, 209 F.3d 43, 48-49 (2d Cir. 2000); *Melgar v. OK Foods*, 902 F.3d 775, 779 (8th Cir. 2018) (a "line-by-line, hour-by-hour review of the attorneys' fees" is not required and review of attorney's fees "requires a certain level of deference of the district court to the parties' agreement.").  Here, Plaintiffs agreed to a one-third contingency fee agreement. Ex. B (Abrahamson Decl.) ¶ 28.

Courts in the Tenth Circuit consider 12 factors in determining the appropriate percentage: (1) the time and labor required; (2) the novelty and difficulty of the question posed; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorneys due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. *Chieftain Royalty Co.*, 888 F.3d 455, 458 (10th Cir. 2017) (citing *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717–19 (5th Cir. 1974)). The court need not consider every single *Johnson* factor. *See, e.g., Nakamura v. Wells Fargo Bank, N.A.*, No. 17 Civ. 4029, 2019 WL 2185081, at *2 (D. Kan. May 21, 2019) ("Not all *Johnson* factors will apply in every case.") As explained below, application of these factors

supports approval of the requested fee of one-third the Gross Settlement Amount.

Regarding the time and efforts required of Plaintiffs' Counsel (factors 1 and 7), this matter was intensely negotiated for over a year.  During this time, the Parties conducted thorough informal discovery, analyzed wage, hour and payroll information, prepared a comprehensive damage model, and ultimately negotiated a resolution to this matter through extensive settlement discussions that included a full-day mediation. This represents a significant devotion of time to reach the resolution of this case.

The separately-negotiated, agreed contingency fee retainer agreement (factors 5, 6, 10, 11, and 12) between Plaintiffs and Plaintiffs' Counsel provides for a contingency fee of one-third of the gross settlement amount, which is in line with amounts approved by many courts in this Circuit. Ex. B (Abrahamson Decl.) ¶ 28; *see, e.g., Budicak Inc. v. Lansing Trade Grp., LLC,* No. 19 Civ. 02449, 2023 WL 7189144, at *1 (D. Kan. June 16, 2023) (approving attorneys' fees of one-third of settlement); *McKeon v. Integrity Pizza LLC*, No. 18 Civ. 0932, 2020 WL 6782238, at *5 (D. Colo. Nov. 18, 2020) (finding requested fee of one-third of settlement in wage and hour case to be reasonable and "in line with contingency fee awards approved in other cases"); Ex. C (*Abernathy v. Molina Healthcare* Approval Order) (approving request for fees in the amount of one-third the settlement amount in FLSA collective action); Ex. D (*Stenulson v. ROI Solutions, LLC* Oder and Motion for Approval) (D. Utah October 11, 2022) (approving request for fees in the amount of 40% of settlement in FLSA collective action); Ex. E (*Thomas v. Image Line, LLC*) Order and Motion for Settlement Approval) (same).  Because the Plaintiffs negotiated an attorneys' fees arrangement at the start of the litigation, the presumption of market-rate reasonableness applies.  *See Briggs v. PNC Financial Serv. Group, Inc.*, No. 15 Civ. 10447, 2016 WL 7018566, at *4 (N.D. Ill. Nov. 29, 2016).

Next, Plaintiffs' counsel's skill, knowledge, reputation, and experience (factors 2, 3, and 9) are well recognized in FLSA cases such as this. *See Osman v. Grube, Inc.,* No. 16 Civ. 00802, 2018 WL 2095172, at *4 (N.D. Ohio May 4, 2018) (Werman Salas are "recognized lawyers in wage and hour litigation and have an excellent national reputation in representing [] employees in this type of case . . . Courts recognize [Werman Salas] as leaders in advocating the rights of such workers throughout the United States."); *Sanchez v. Roka Akor Chicago LLC,* No. 14 Civ. 4645, 2017 WL 1425837, at *5-7 (N.D. Ill. Apr. 20, 2017) (Werman Salas are "national leaders in advocating the rights of working people in wage and hour litigation."). A resume for Werman Salas P.C. is attached as Exhibit F. Plaintiffs' Counsel has litigated and settled hundreds of cases involving class and collective wage and hour claims. Based on this experience, Plaintiffs' Counsel is familiar with a large body of documents and information concerning FLSA litigation, which benefits cases such as this and maximizes the settlement value of the case.

Plaintiffs' Counsel's fee request is also reasonable considering the significant risks of nonpayment Plaintiffs' Counsel faced. At the outset of the litigation, Plaintiffs' Counsel took "on a significant degree of risk of nonpayment" in agreeing to represent Plaintiffs. *Taubenfeld v. Aon Corp.,* 415 F.3d 597, 600 (7th Cir. 2005) (approving of district court's reliance on this factor in evaluating attorneys' fees). Plaintiffs' Counsel took this case on a contingent fee basis and assumed the risk they would receive *no* fee for their services. Ex. B (Abrahamson Decl.) ¶ 29.[5] Here, Plaintiffs' Counsel faced risk in establishing that collective treatment was appropriate. As the Seventh Circuit has noted, counsel "could have lost everything" they invested. *Matter of Cont'l Ill.*

---

[5]    *See Sutton v. Bernard*, 504 F.3d 688, 693-94 (7th Cir. 2007) ("We recognized [in an earlier case] that there is generally some degree of risk that attorneys will receive no fee (or at least not the fee that reflects their efforts) when representing a class because their fee is linked to the success of the suit.").

*Sec. Litig.*, 962 F.2d 566, 570 (7th Cir. 1992).

Finally, "the most critical factor in determining a fee award is the degree of success obtained" (factor 8).  *Singer v. City of Waco, Tex.*, 324 F.3d 813, 829 (5th Cir. 2003). The degree of success here is high –Plaintiffs' Counsel estimates that the Gross Settlement Amount represents approximately 100 percent of Plaintiffs' actual lost wages and 50 percent of liquidated damages.  *Supra*.  Even after fees and costs are deducted, the Net Settlement Amount represents 100 percent of Plaintiffs' actual lost wages.  *Supra*.  The Eligible Settlement Collective Members' average tenure was approximately 25 weeks, and the average gross recovery is approximately $3,300 and $2,070 net of fees and costs.  Ex. B (Abrahamson Decl.) ¶ 27.

Further, Eligible Settlement Collective Members who timely negotiate their Settlement Payment check will provide Defendant with a limited release of their overtime wage claims. Those Eligible Settlement Collective Members who do not cash their Settlement Payment checks will not release any of their claims against Defendant.  Ex. A (Settlement Agreement) § 5(c). The absence of a general release exemplifies the results achieved for the Eligible Settlement Collective Members.  *See Ramah Navajo Chapter v. Babbitt,* 50 F. Supp. 2d 1091, 1103-04 (D.N.M. 1999).

Thus, based upon the negotiated fee agreement in this case, the normal rate of compensation in similar cases, the risk Plaintiffs' Counsel undertook in engaging in this litigation, and the excellent result achieved for Eligible Settlement Class Members, Plaintiffs' Counsel is entitled to a reasonable attorneys' fees award of one-third of the Settlement Fund.

### B.    Plaintiffs' Litigation Expenses.

The settlement provides that Plaintiffs' Counsel may apply to the Court for payment of litigation expenses up to $7,500.  Plaintiffs' Counsel seek reimbursement of $5,917.92, which is

the amount of litigation expenses Plaintiffs' Counsel has incurred in this matter through filing this action, including: court filing fees, electronic research, travel, and mediation costs.  Ex. B (Abrahamson Decl.) ¶ 30.  Plaintiffs' Counsel's request of that amount from the Settlement Fund as payment of costs and expenses is appropriate, as these costs and expenses were necessarily incurred in order to litigate and settle this case.  *Id.* ¶ 31.

## CONCLUSION

This Settlement was reached after extensive settlement negotiations.  The Parties engaged in a thorough analysis of the facts and the data at issue and the Settlement provides Eligible Settlement Collective Members with significant monetary relief.  Because the settlement is a fair and reasonable resolution of a *bona fide* dispute between the Parties, it should be approved.


Dated: March 22, 2024                          Respectfully submitted,

                                               /s/ Sally J. Abrahamson

                                               Sally J. Abrahamson*
                                               **WERMAN SALAS P.C.**
                                               335 18th Pl NE
                                               Washington D.C. 20002
                                               Telephone: (202) 830-2016
                                               Facsimile: (312) 419-1025
                                               sabrahamson@flsalaw.com

                                               Douglas M. Werman*
                                               **WERMAN SALAS P.C.**
                                               77 W. Washington Street, Suite 1402
                                               Chicago, Illinois 60602
                                               Telephone: (312) 419-1008
                                               Facsimile: (312) 419-1025
                                               dwerman@flsalaw.com

                                               April Hollingsworth (Bar No. 9391)
                                               Katie Panzer (Bar No. 16919)
                                               **HOLLINGSWORTH LAW OFFICE**
                                               1881 South 110 East
                                               Salt Lake City, Utah 84105

Tel: (801) 415-9909
Facsimile: (801) 303-7324
april@aprilhollingsworthlaw.com
katie@aprilhollingsworthlaw.com

*Admitted pro hac vice.*

*Attorneys for Plaintiffs and
the Proposed Collective*